UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Michael J. Murdock,                          Case No. 3:15-cv-01242

       Plaintiff

    v.                                            MEMORANDUM OPINION

CSX Transportation, Inc.,

       Defendant

## I. Introduction

Before me is Defendant CSX Transportation, Inc.'s motion to dismiss (Doc. No. 7), Plaintiff's opposition (Doc. No. 11), and Defendant's reply (Doc. No. 12). Defendant argues dismissal is appropriate because Plaintiff's off-duty personal illness falls outside the scope of the anti-retaliation provisions to the Federal Railway Safety Act ("FRSA"), allegedly violated by CSX. For the reasons that follow, I find the Defendant's motion to dismiss well taken.

## II. Standard

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." Courts must accept as true all of the factual allegations contained in the complaint when ruling on a motion to dismiss. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). To survive a motion to dismiss under Rule 12(b)(6), "even though a complaint need not contain 'detailed' factual allegations, its 'factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'" *Ass'n of Cleveland Fire Fighters v. City of*

*Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Twombly*, 550 U.S. at 555 (stating that the complaint must contain something more than "a formulaic recitation of the elements of a cause of action"). A complaint must state sufficient facts to, when accepted as true, state a claim "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully" and requires the complaint to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct).

### III. Discussion

A. Positions of the Parties

Plaintiff was an employee of CSX at the time of his termination. He claims the Defendant violated the Federal Railroad Safety Act, 49 U.S.C. § 20109(b) (1) and (c) (2), insofar as he was terminated after missing work due to illness. Plaintiff alleges he was engaged in protected conduct when he missed work due to illness, nevertheless the Defendant terminated him from employment in violation of the FRSA.

In contrast, Defendant contends Plaintiff fails to state a claim upon which relief can be granted as he neither reported a work-related illness nor missed work pursuant to a physician's orders or treatment plan. Alternatively, the Defendant argues Plaintiff failed to properly exhaust his administrative remedies or that he pled facts sufficient to sustain a claim for relief under 49 U.S.C. § 20109(b)(1)(B).

Both sides dispute whether Plaintiff was engaged in FRSA-protected activity. The Defendant states this activity was not protected because the Plaintiff did not suffer from a work-

related illness or injury. The Plaintiff contends § 20109(c)(2) protects an employee whether or not his illness or injury is work-related.

    B. Employee protections under § 20109(c)

The FRSA's anti-retaliation provision addresses prompt medical attention as follows:

> **(c) Prompt medical attention.**--
>
> **(1) Prohibition.**--A railroad carrier or person covered under this section may not deny, delay, or interfere with the medical or first aid treatment *of an employee who is injured during the course of employment*. If transportation to a hospital is requested by an employee who is injured during the course of employment, the railroad shall promptly arrange to have the injured employee transported to the nearest hospital where the employee can receive safe and appropriate medical care.
>
> **(2) Discipline**.--A railroad carrier or person covered under this section may not discipline, or threaten discipline to, an employee for requesting medical or first aid treatment, or for following orders or a treatment plan of a treating physician, except that a railroad carrier's refusal to permit an employee to return to work following medical treatment shall not be considered a violation of this section if the refusal is pursuant to Federal Railroad Administration medical standards for fitness of duty or, if there are no pertinent Federal Railroad Administration standards, a carrier's medical standards for fitness for duty. For purposes of this paragraph, the term "discipline" means to bring charges against a person in a disciplinary proceeding, suspend, terminate, place on probation, or make note of reprimand on an employee's record.

49 U.S.C. § 20109(c)(1)-(2) (emphasis added).

    C. Statutory Construction

Congress enacted the FRSA to discourage railway employers from influencing the medical care of employees injured on the job[1] and "'promote safety in every area of railroad operations and reduce railroad-related accidents and incidents.'" *CSX Transp., Inc. v. City of Plymouth*, 283 F.3d 812, 815 (6th Cir. 2002) (quoting 49 U.S.C. § 20101)). According to Barnett,

> supervisors accompan[ied] employees on their medical appointments and attempt[ed] to influence employee medical care, sending employees to company physicians instead of physicians of their own choosing, and light-duty work programs, which have the injured employee report to work, but perform no work, to

---

[1] Barnett, Whistleblower Protection for Railroad Workers Under the Federal Rail Safety Act, 49 U.S.C. § 20109: Disputes about the Statute's "Plain Meaning," SU015 ALI-CLE 1495 (2012) (*hereinafter* "Whistleblower Protection").

3

>avoid having to report the injury as a lost work day to the Federal Railroad Administration.

Barnett, Whistleblower Protection (citing *Santiago v. Metro-North Commuter Railroad Co.*, ARB Case No. 10-147, 2012 WL 3255136 (July 25, 2012) and "Impact of Railroad Injury, Accident, and Discipline Policies on the Safety of America's Railroads," Hearing Before the House Committee on Transportation and Infrastructure, 110th Cong. (2007)(H. Hrg. 110-84)(Oct. 22, 2007)).

The FRSA gives the Secretary of Transportation the power to "'prescribe regulations and issue orders for every area of railroad safety supplementing laws and regulations in effect on October 16, 1970.'" *Id.* (quoting 49 U.S.C. § 20103(a)). The FRSA was amended several times to "'enhance []' employees' 'administrative and civil remedies,' and 'to ensure that employees can report their concerns without the fear of possible retaliation or discrimination from employers.'" *Norfolk S. Ry. Co. v. Perez*, 778 F.3d 507, 510 (6th Cir. 2015), *reh'g denied* (May 11, 2015) (quoting H.R. Rep. No. 110-259, at 348 (2007), 2007 U.S.C.C.A.N. 119, 181 (Conf.Rep.) (internal quotation marks omitted)).

Both sides agree the Sixth Circuit has not addressed whether the anti-retaliation provision of 49 U.S.C. § 20109(c)(2) applies to non-work related illness. In making a determination, I first turn to guidance from the Sixth Circuit on statutory interpretation.

The Sixth Circuit requires I enforce the plain meaning of a statute if the language is unambiguous. *A. Philip Randolph Inst. v. Husted*, 838 F.3d 699, 716 (6th Cir. 2016) (quoting *United States v. Plavcak*, 411 F.3d 655, 661 (6th Cir. 2005)). "[A]mbiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Flores v. U.S. Citizenship & Immigration Servs.*, 718 F.3d 548, 551 (6th Cir. 2013) (quoting *Nat'l Cotton Council of Am. v. U.S. EPA*, 553 F.3d 927, 933 (6th Cir. 2009)). Merriam-Webster defines "context" as "the part or parts of a written or spoken passage preceding… a particular word or group of words and so intimately associated with them as to throw light upon their meaning." Webster's Third New International Dictionary 492 (3d. ed. 1986).

4

In *Port Auth. Trans-Hudson Corp. v. Sec'y, U.S. Dep't of Labor*, 776 F.3d 157 (3d Cir. 2015), the Third Circuit recently decided that off-duty injuries—such as Plaintiff's bronchitis—fall outside the protections of the provisions of the FRSA allegedly violated by Defendant CSX.

The issue in *Port Authority* was whether 49 U.S.C. § 20109(c)(2) applied to off-duty injuries. The claimant was a repairman who was suspended due to absenteeism and challenged his suspension as a retaliatory action for taking sick leave statutorily protected under the FRSA. His complaint, filed with the United States Secretary of Labor, was adjudicated before an administrative law judge who determined the railroad to have violated the FRSA by disciplining the claimant relative to his off-duty injury. The award was upheld by the Department of Labor. On appeal to the Third Circuit, the railroad requested resolution of "whether subsection (c)(2) applies to orders of treating physicians that stem from *off-duty* injuries." *Id.* at 160.

The appellate court began by examining the anti-retaliation provision noting that subsection (c)(1) referenced injuries "during the course of employment," while subsection (c)(2) did not contain this language. The railroad argued that the "treatment" aspect referenced in subsection (c)(2) referenced the "treatment" in subsection (c)(1) and in so doing "incorporate[d] the 'during the course of employment' limitation into subsection (c)(2)." *Id.* at 162.

The appellate court rejected the DOL's argument these subsections were distinct noting if a physician's order directed an employee not to work, because there was no time limitation in the language, the DOL's interpretation "would functionally confer indefinite sick leave on all railroad employees who c[ould] obtain a physician's note." *Id.* The Third Circuit determined that "because subsection (c)(2) [wa]s an anti-retalitation provision obviously related to subsection (c)(1), it should *presumptively* be interpreted only to further the objectives of subsection (c)(1)." *Id.*

The Third Circuit also noted, "[g]enerally, an 'antiretaliation provision seeks to secure [the] primary objective' advanced by the substantive provision." *Id.* at 163 citing *Burlington N. & Santa Fe*

5

*Ry. Co., v. White*, 548 U.S. at 63 (2006). Examining the statutory text, the appellate court determined that "[i]nterpreting subsection (c)(2) to also cover off-duty injures would not further the purposes of subsection (c)(1), which is explicitly limited to on-duty injuries." *Id.*

The appellate court considered whether there was evidence that Congress intended subsection (c)(2) to advance an independent objective looking to the Administrative Review Board's (ARB) decision finding (c)(2) was not limited to on-duty injuries. The court further noted that fourteen months earlier, a different ARB panel came to the opposite conclusion on the same issue.

The Third Circuit rejected the ARB's reliance on *Russello v. United States*, 464 U.S. 16, 23 (1983), for the proposition that the "absence of any express on-duty limitation in subsection (c)(2), in contrast to the presence of such a limitation in subsection (c)(1), means that Congress did not intend for that limitation to apply to subsection (c)(2)." *Id.*

The panel in *Port Authority* acknowledged a superficial similarity in the case before it and the one in *Russello*, a RICO action. It further found the presumption in *Russello* "only applies when the two provisions are sufficiently distinct that they do not—either explicitly or implicitly—incorporate language from the other provision." *Id.* at 164. The Third Circuit did not find the *Russello* presumption persuasive because there was not "a hypothesis of careful draftsmanship," evidenced in the "inexact drafting in § 20109." *Id.* at 165 citing *Kapral v. United States*, 16 F.3d 656, 579 (3d. Cir. 1999) and *City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 435-36 (2002) (notably not following the *Russello* presumption due to perceived drafting inconsistencies).

In declining to apply the *Russello* presumption, the appellate court also relied on the Supreme Court's decision in *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 7 (2011), for the proposition that "interpretation of [a] phrase [in an anti-retaliation provision] 'depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis.'"

6

At least two other district courts have adopted this reasoning. *See Miller v. Bnsf Railway Co.*, Case No. 14-2596-JAR-TJJ, 2016 WL 2866152 (D. Kansas May, 17, 2016) (motion for summary judgment); *Goad v. BNSF Railway Co.*, Case No. 15-00650-CV-W-HFS, 2016 WL 7131597 (W.D. Mo. March 2, 2016) (motion to dismiss).

I find the Third Circuit reasoning to be persuasive in interpreting subsections (c)(1) and (c)(2) of 49 U.S.C. § 20109. In addition, "[I]dentical words or phrases within the same statute should normally be given the same meaning." *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224 (2007) (quoted in *Day v. James Marine, Inc.*, 518 F.3d 411, 416 (6th Cir. 2008)). The phrase "of an employee who is injured during the course of employment" is a post-modifying prepositional phrase limiting the meaning of the noun "medical or first aid treatment." Subsection (c)(2) uses the "identical" noun "medical or first aid treatment." Thus, I find "medical or first aid treatment" is limited to injuries that occur "during the course of employment."

Based upon the foregoing, I find the Plaintiff has failed to state a cause of action because his non-work-related illness is not covered by the FRSA.

D.  Applicability of § 20109(b)

The Defendant also seeks dismissal for alleged violations of employee protections under § 20109(b), which states in pertinent part:

> **(b) Hazardous safety or security conditions.--(1)** A railroad carrier… shall not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee for--
>
> **(A)** reporting, in good faith, a hazardous safety or security condition;
>
> **(B)** refusing to work when confronted by a hazardous safety or security condition related to the performance of the employee's duties, if the conditions described in paragraph (2) exist; or
>
> **(C)** refusing to authorize the use of any safety-related equipment, track, or structures, if the employee is responsible for the inspection or repair of the equipment, track, or structures, when the employee believes that the equipment,

7

> track, or structures are in a hazardous safety or security condition, if the conditions described in paragraph (2) exist.
>
> **(2)** A refusal is protected under paragraph (1)(B) and (C) if--
>
> **(A)** the refusal is made in good faith and no reasonable alternative to the refusal is available to the employee;
>
> **(B)** a reasonable individual in the circumstances then confronting the employee would conclude that--
>
> **(i)** the hazardous condition presents an imminent danger of death or serious injury; and
>
> **(ii)** the urgency of the situation does not allow sufficient time to eliminate the danger without such refusal; and
>
> **(C)** the employee, where possible, has notified the railroad carrier of the existence of the hazardous condition and the intention not to perform further work, or not to authorize the use of the hazardous equipment, track, or structures, unless the condition is corrected immediately or the equipment, track, or structures are repaired properly or replaced.
>
> **(3)** In this subsection, only paragraph (1)(A) shall apply to security personnel employed by a railroad carrier to protect individuals and property transported by railroad.

49 U.S.C. § 20109(b)(1)(B).

Plaintiff alleges his "dizziness," "difficulty breathing," and "shortness of breath" created a "hazardous safety or security condition" because "[s]uch symptoms made it impossible for Mr. Murdock to operate, or even stand near, heavy equipment, safely." (Doc. No. 1 at ¶ 23, 65). A similar argument was rejected by the district court in *Goad v. BNSF Railway Co.*, 2016 WL 7131597 at *4. There, the plaintiff notified the railroad he was medically unfit to perform his duties due to his medical condition, alleging he was reporting a hazardous safety condition under the FRSA and afforded protection under § 20109(b). The district court there relied on the *Port Authority Trans-Hudson* case in noting the work-related limitation in subsection (c)(2) could also apply to section (b).

The word "condition" is used throughout subsection (b). It is used relative to "equipment, track, or structures," in subsection (b)(2)(B). I, therefore, find Congress did not contemplate

8

"condition" as used in § 20109(b) to include personal illnesses. *See Day*, 518 F.3d at 416 (quoting *Powerex Corp.*, 551 U.S. at 224) ("'[I]dentical words and phrases used within the same statute should normally be given the same meaning'").

Consistent with the determinations by other courts considering this issue, I find Plaintiff's personal illness does not qualify for protection under the statute as to subsection (b). Therefore, the Defendant's motion to dismiss is also granted as to this claim.

## IV. CONCLUSION

For the reasons stated above, I grant Defendant's motion to dismiss (Doc. No. 7). So ordered.

s/ Jeffrey J. Helmick
United States District Judge
